**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ABE TAPIA,

        Plaintiff,

vs.                                        No. CIV-02-0513  JB/ACT

STEVEN R. BEFFORT, TOM
RABOURN, WILLIAM "BILL" HAAS,
and JOHN or JANE DOES, 1-6,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on three of the Defendants' motions: (i) Motion to Dismiss 42 U.S.C. § 1985 Claim (Doc. 8, filed July 5, 2002); (ii) Motion for Partial Summary Judgment as to 42 U.S.C. § 1983 Due Process Claims (Doc. 11, filed July 16, 2002); and (iii) Motion for Partial Summary Judgment as to 42 U.S.C. § 1983 First Amendment Claim (Qualified Immunity) (Doc. 20, filed August 22, 2002). With respect to the motion regarding § 1985, the motion is unopposed, and the Court will grant it. With respect to the motion regarding due process claims, the Plaintiff does not oppose summary judgment on his claim for procedural due process, and the Court will grant it. With respect to the opposed motions regarding Tapia's substantive due process and First Amendment claims, for the reasons explained below, the Court will grant the motions.

**FACTUAL BACKGROUND**

The Defendants are all individuals sued in their individual capacities. At all times material to this lawsuit, Defendant Steven R. Beffort ("Beffort") was the duly appointed Secretary of the State

1

of New Mexico General Services Department ("GSD") and responsible for GSD's operations. See Complaint ¶ 4 at 1; NMSA 1978, §§ 9-17-4 and 9-17-5. GSD is a public employer subject to the New Mexico State Personnel Act. See NMSA 1978, §§ 10-9-1 to 10-9-25. Among other things, GSD maintains and operates a Risk Management Division ("RMD") for the purpose of responding to claims for damages against the state and a Transportation Services Division for the purpose of distributing and disposing of surplus property transferred to it by state and federal public entities. See Complaint ¶ 3, at 1. Defendants Tom Rabourn ("Rabourn") and William Haas ("Haas") held positions of Director and Claims Administrator/Supervisor, respectively, within the RMD. See id. ¶¶ 5-6 at 2.

Prior to his employment with GSD, the Plaintiff, Abe Tapia ("Tapia"), was involved in unrelated criminal proceedings that later became relevant to the present lawsuit. A state of New Mexico First Judicial District Court jury convicted Tapia of aggravated assault on a peace officer. See State v. Tapia, 2000-NMCA-054, 4 P.3d 37, cert. denied, 129 N.M. 208, 4 P.3d 36 (2000) (table). The conviction was based on a 1996 altercation at Tapia's residence between Tapia and New Mexico State Police Officer Keith Mundy when Mundy arrested Tapia's son, Johnny. See id. at ¶¶ 5-10, 4 P.3d at 39-40. Subsequently, the New Mexico Court of Appeals reversed Tapia's conviction and remanded for a new trial, finding that sufficient evidence supported the verdict, but that some of the jury instructions were flawed. See id. at ¶¶ 25-26, 4 P.3d at 42.

On February 4, 1999, Tapia, his wife Kathy Tapia, and their son, Johnny, filed a civil rights complaint and lawsuit in the State of New Mexico First Judicial District Court against the New Mexico Department of Public Safety, Officer Mundy and other state agents based on the incident which lead to Tapia's conviction of aggravated assault on a peace officer ("Tapia I"). The allegations

in Tapia I were unrelated to any conduct on the Defendants' part in this action. The complaint in Tapia I pleaded five claims for relief: (i) violation of their property rights and state constitutional rights as to all three plaintiffs; (ii) defamation of their respective characters; (iii) battery against Johnny Tapia; (iv) prima facie tort as to all plaintiffs; and (v) loss of consortium by Kathy Tapia. See Tapia I Complaint ¶¶ 22-38, at 4-7.  The complaint in Tapia I sought compensatory damages for severe emotional distress that the three Tapias suffered; for their pain and suffering; for loss of income; for loss of their ability to conduct business; for injury to their reputations; for humiliation and embarrassment; for legal costs and expenses; and for violation of their constitutional rights. See id. ¶ 41, at 7.  The complaint also sought punitive damages, injunctive relief to prevent retaliatory harassment by the Defendants, interest, costs, and attorney fees. See id. Prayer for Relief, at 8.

On March 22, 1999, the Transportation Services Division of GSD hired Tapia to serve as Manager of the Surplus Property Bureau. See Complaint ¶ 11, at 3.  Subsequent to Tapia's hire, on April 5, 1999, the Tapia I litigation was referred to RMD for investigation and legal defense in accordance with state statutes.  See id. ¶ 9, at 2.  During calendar year 1999, the Tapia I litigation was one of approximately 2,069 claims referred to RMD for investigation and defense. See Affidavit of William Haas, ¶ 4, at 1 (executed August 19, 2002).

Beffort did not read Tapia's complaint in the Tapia I lawsuit. See Second Affidavit of Steven R. Beffort (executed August 19, 2002) ¶¶ 15, at 3.  Beffort does not know the details of the claims and allegations in Tapia I.  See id.  Beffort has no opinion one way or another regarding the merits of the Tapia I litigation.  See id. ¶ 16, at 3.

Tapia alleges that, during the course of the investigation into Tapia I, the Defendants learned of his employment in GSD's Transportation Services Division. See id. ¶ 14, at 3.  Tapia asserts that,

3

thereafter, the Defendants acted in concert with one another and other individuals to intimidate and discredit Tapia in retaliation for exercising his rights by filing Tapia I and in an attempt to gain an advantage in Tapia I. See id. ¶ 15, at 3. Tapia alleges that the Defendants began an investigation of Tapia's employment and formulated false allegations based on that investigation. See id. These allegations included misconduct in the scope of his employment and criminal conduct. See id. ¶ 17, at 4.

      Beffort alleges that Tapia first came to his attention in a general way, in late June or early July 2000, in connection with an apparently routine property loss claim that Tapia reported for a state-owned crane that had been damaged. See Second Affidavit of Steven R. Beffort ¶ 6, at 1. On July 18, 2000, a third-party citizen, Ted Sierocinski, contacted Dan Zizic, GSD's Internal Auditor, informing Zizic of potential irregularities, potential rule violations, and unanswered questions. See id. ¶ 7, at 2. On July 27, 2000, as a result of Zizic's concerns and a preliminary investigation into the circumstances surrounding the crane loss, Beffort placed Tapia on administrative leave with pay pending further investigation regarding the crane situation and related matters. See id. ¶ 8, at 2. Subsequently, GSD's investigation established Tapia's misuse of state-owned vehicles, misuse of bureau employees under his supervision, misappropriation of cash, and Tapia's false statements or omissions of material fact with intent to mislead. See id. ¶ 9, at 2.

      By letter dated September 26, 2000, Beffort gave Tapia written notice of GSD's intent to dismiss Tapia from his employment as Manager of the Surplus Property Bureau. See Notice of Contemplated Action (dated September 26, 2000). The Notice of Contemplated Action set forth reasons for the proposed dismissal and summarized the evidence underlying those reasons. See id. The letter explained Tapia's right to respond to the allegations, either orally or in writing. See id. at

4-5.

At Tapia's request, GSD subsequently provided Tapia with three volumes of documentary evidence supporting the allegations in the Secretary's Notice of Contemplated Action. By letter dated November 2, 2000, Tapia's attorney submitted a written response to the Secretary's Notice of Contemplated Action. See Letter from E. Justin Pennington to Michael Jaramillo - Director of Human Services Division (dated November 2, 2000). Thereafter, on November 9, 2000, Beffort dismissed Tapia from his position as Manager of GSD's Transportation Services Division, Surplus Property Bureau, for alleged misuse of state-owned vehicles, misuse of bureau employees under his supervision, misappropriation of state property, misappropriation of cash, and false statements or omissions of material fact with intent to mislead. See Notice of Final Action (dated November 9, 2000).

In the same letter, Beffort advised Tapia of his right to appeal his dismissal to the Personnel Board within thirty calendar days and the procedural requirements for initiating such an appeal. See id. at 5. Tapia did not appeal his dismissal to the Personnel Board. Instead, Tapia filed an action in the New Mexico state district court alleging that GSD had breached his contract of employment when it discharged him without just cause and in retaliation for his seeking redress in Tapia I. See Tapia v. State of New Mexico General Services Department, Complaint, No. D-0101-CV-2002-216 (1st Judicial District Court, County of Santa Fe, New Mexico, filed Jan. 30, 2002).

The state court dismissed Tapia's complaint for failure to state a claim. See id.; Order of Dismissal with Prejudice of Complaint (filed May 10, 2002). Tapia filed the present federal action on May 9, 2002. Tapia also appealed the New Mexico district court's dismissal of his state complaint to the New Mexico Court of Appeals. The New Mexico Court of Appeals proposed to summarily

affirm the district court's dismissal of the complaint.  See Notice - Proposed Summary Disposition (N.M. Ct. App., filed August 1, 2002).  Unpersuaded by the memorandum in opposition that Tapia filed, the Court of Appeals affirmed the dismissal based upon Tapia's failure to exhaust his mandatory remedies by failing to appeal his termination to the New Mexico State Personnel Board in accordance with the New Mexico Personnel Act.  See Memorandum Opinion (N.M. Ct. App., filed February 4, 2003).

## STANDARDS FOR DECIDING MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party cannot simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts.

Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In addition, disputes about material facts must be "genuine" to prevent the entry of summary judgment; that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  Id.  As the United States Court of Appeals for the Tenth Circuit explained in Vitkus v. Beatrice Co., 11 F.3d 1535 (10th Cir. 1993): "To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence . . . .  Summary judgment may be granted if the evidence [presented in opposition to summary judgment] is merely colorable or is not significantly probative."  Id. at 1539 (citing Anderson v. Liberty Lobby)(citation omitted).

Additionally, the nonmovant's evidence must be based upon personal knowledge and must be admissible; conclusions do not defeat summary judgment. See Hall v. Bellman, 935 F.2d 1106, 1111 (10th Cir. 1991). Likewise, speculation, conjecture or surmise should not prevent summary judgment. See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1170 (10th Cir.) (stating that "speculation . . . will not suffice for evidence" in context of summary judgment).

## LEGAL AUTHORITY AND ANALYSIS

### I.     MOTION TO DISMISS 42 U.S.C. § 1985 CLAIM

The Defendants move the Court to dismiss Tapia's claim of conspiracy in violation of § 1985 for failure to state a claim upon which relief can be granted. As grounds for the motion, the Defendants argue that § 1985 does not apply to this case because Tapia does not allege interference with a federal judicial proceeding or class-based, invidiously discriminatory animus. See 42 U.S.C. § 1985(2) and (3). Tapia has conceded that his Complaint, as currently plead, fails to state a claim under § 1985. Thus, Tapia does not oppose dismissal of his § 1985 conspiracy claim. Accordingly, the Court will grant the motion and dismiss Tapia's § 1985 claim with prejudice.

### II.    MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO 42 U.S.C. § 1983 DUE PROCESS CLAIMS

The Defendants move the Court to dismiss Tapia's procedural and substantive due process claims. Tapia does not oppose the grant of summary judgment with respect to his procedural due process claim. Accordingly, the Court will grant that portion of the motion and dismiss Tapia's 42 U.S.C. § 1983 claim for procedural due process. Because Tapia opposes summary judgment with respect to his substantive due process claim, the Court heard oral argument on that portion of the

motion and sets forth its reasoning and decision below.

For purposes of this motion, the Defendants do not dispute that Tapia had constitutionally protected property and liberty interests in his state employment. The Defendants argue, however, that Tapia's failure to avail himself of an available and adequate state remedy precludes subsequent action under § 1983 based on alleged violation of his due process rights. The administrative remedy available to Tapia involved the following: (i) a de novo evidentiary hearing before a hearing officer appointed by the Personnel Board; (ii) the rights, among others, to counsel, to discovery, to present evidence, to compel the attendance of witnesses and to cross examine witnesses; (iii) a recommendation from the hearing officer to the Personnel Board; and (iv) a final decision by the Personnel Board whether, based on the evidence, GSD had terminated Tapia for "just cause" within the meaning of the statute and the Board's promulgated rules. See 1 NMAC 7.11 ("Discipline"); id. 7.12 ("Adjudication").

If the Board found that GSD took its action without just cause, the Board had the power to modify GSD's disciplinary action, reinstate Tapia to the same position or to one of like status and pay, and/or award him back pay. If Tapia was aggrieved by the Personnel Board's decision, he could have appealed to the State of New Mexico district court, and, if aggrieved by the district court's decision, he could have appealed to the state court of appeals and to the state supreme court. Tapia, however, did not use the available state administrative remedy, including state judicial review, that could have corrected any erroneous decision-making by his employer and served as a name-clearing hearing to vindicate his reputation. Instead, Tapia filed first a state court action for wrongful discharge and then this federal action alleging that GSD deprived him of his constitutionally protected property and liberty interests in connection with the termination of his employment.

The Supreme Court of the United States has held that, where adequate state remedies exist to address deprivations of property caused by state actors, the provisions of 42 U.S.C. §1983 will not apply.  See Parratt v. Taylor, 451 U.S. 527, 544 (1981),  overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  Although noting that simple negligence was probably inadequate to satisfy §1983's state action requirement, the Supreme Court reasoned that existing state law remedies provide the due process mandated by the Constitution to address deprivation of property at the hands of state actors.

> Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

Id.  The Supreme Court thus articulated the premise that Tapia's due process claim must fail where he did not avail himself of an appeal to the New Mexico State Personnel Board.

The Court of Appeals for the Tenth Circuit has gone a step further by holding that "unless state law fails to afford [the plaintiff] adequate process, he has no federal constitutional claim to begin with."  Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 557 (10th Cir. 1989).  The Tenth Circuit stated that its holding was not based on exhaustion of remedies, but rather focused exclusively on the existence of a federal claim.  See id. ("Thus, our holding here is not that [the plaintiff] must exhaust his claim before he has a federal cause of action . . . .").  According to this holding, Tapia does not have a due process claim to pursue.

Regardless whether this Court views the issue as involving waiver or whether a federal cause of action exists, Tapia cannot pursue a due process claim in this Court.  See, e.g., Parratt v. Taylor,

9

451 U.S. at 544; Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d at 557; Burns v. Harris Co. Bail Bond Bd., 139 F.3d 513, 519 (5th Cir. 1998) ("[A] plaintiff cannot argue that her due process rights have been violated when she has failed to utilize the state remedies available to her."); Copple v. City of Concordia, Kan., 814 F. Supp. 1529, 1539 (D. Kan. 1993)("By knowingly failing to take advantage of the post-termination procedures available to him, [the plaintiff] has waived his right to challenge them in this action.") (citing Pitts v. Board of Education, 869 F.2d at 557).  Thus, the Court finds that, because an adequate state administrative remedy existed and Tapia failed to avail himself of that remedy, Tapia cannot now pursue a due process claim in federal court.

Tapia argues that, even assuming that the existence of or his failure to use state administrative procedures somehow waives his due process rights, the rule applies only to his procedural due process rights rather than his substantive due process rights.  He contends that substantive due process claims differ from procedural due process claims in that substantive due process implicates important liberty interests beyond mere procedural guarantees.  See Paul v. Davis, 424 U.S. 693, 711 n.5 (1976).  Tapia further argues that when governmental conduct implicates a substantive due process right, no amount of process -- whether pre- or post-deprivation -- can adequately remedy the loss of that right.

Tapia relies on an Eleventh Circuit case for the proposition that substantive due process claims can proceed even where state administrative remedies exist.  See Casines v. Murchek, 766 F.2d 1494, 1502-1503 (11th Cir. 1985).  In that case, however, the court explained that a substantive due process violation requires allegations that the state has "violated an independent substantive right and . . . 'rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.'"  Id. at 1502 (emphasis added) (quoting Augustine v. Doe, 740 F.2d 322,

10

327 (5th Cir. 1984)). The state may have violated an independent substantive right when a plaintiff challenges the constitutionality of the established state procedure itself rather than claiming that the defendant failed to follow that procedure. See Casines v. Murchek, 766 F.2d at 1503.

Tapia's allegations in this case do not identify an independent substantive right that the Defendants violated. The only deprivation Tapia alleges is that GSD terminated him from his employment in retaliation for filing an earlier lawsuit, i.e. without just cause. The New Mexico Legislature created the available administrative procedures to remedy such deprivations. While Tapia correctly points out that New Mexico courts have held that personnel boards lack jurisdiction to adjudicate § 1983 claims, the forum available to Tapia had authority to make a just cause determination. See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 12, 952 P.2d 474, 477.

Thus, Tapia has failed to demonstrate that, under the circumstances, he has a substantive due process right that differs in any meaningful way from his procedural due process rights. When given the opportunity during oral argument to articulate such a distinction, Tapia was unable to do so. Thus, the Court finds that Tapia's procedural and substantive due process rights in this case are similar enough to be addressed together. See Archuleta v. Colorado Dept. of Institutions, Division of Youth Services., 936 F.2d 483, 490-491 (10th Cir. 1991) ("We need not decide the difficult question of when, if ever, the existence of an adequate state procedure in which the plaintiff could seek a remedy for the deprivation of his or her property precludes a claim for substantive due process.").[1] The facts that an adequate post-termination procedure was available to Tapia and that

---

[1] In Archuleta v. Colorado Dept. of Institutions, the Tenth Circuit stated that, where the state action under 42 U.S.C. § 1983 is dismissal of a tenured public employee, "the procedure established by the state [for appealing dismissal to a State Personnel Board] provided the plaintiff with both procedural and substantive due process." Id. at 491. The Tenth Circuit also stated that the fact the § 1983 action might provide different or greater relief than did state administrative remedies is not relevant.

the state courts have dismissed his claim for failure to exhaust administrative remedies are a sufficient basis for a finding that he cannot now state a substantive due process claim under § 1983 predicated on the loss of employment. Tapia waived all such rights when he failed to use the constitutionally adequate state process. See id. at 490-491. Accordingly, any waiver or bar with respect to Tapia's procedural due process claim applies equally to his substantive due process claim.

Even assuming that the existence of an adequate state remedy does not preclude a federal cause of action for substantive due process, Tapia would still bear the burden of establishing that the Defendants' conduct meets the high standard necessary to constitute such a violation. The Supreme Court of the United States has held that substantive due process claims arise only when the plaintiff can demonstrate "the cognizable level of executive abuse of power as that which shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citing Rochin v. California, 342 U.S. 165, 172-173 (1952)). Accordingly, only the most outrageous and egregious governmental actions will create such a claim. See County of Sacramento v. Lewis, 523 U.S. at 847 n. 8 ("Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").

The "shock-the-conscience" standard is a very high one. Indeed, in County of Sacramento v. Lewis, the Supreme Court found that police officers who caused the death of an innocent passenger during the high speed pursuit of a motorcycle driver did not violate substantive due process. See id. at 855. The Supreme Court reached this result even though the pursuit involved speeds of up to 100 miles per hour through residential neighborhoods. See id. at 837.

Other cases confirm that extremely egregious conduct is necessary before an official will be

12

subject to liability for a substantive due process violation. See, e.g., Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987) (holding that allegations that public school principal's beatings of a third-grade student with a wooden paddle while being held upside down by a teacher caused cuts, bleeding, welts, deep bruises, and permanent scars to child were sufficient to overcome summary judgment on substantive due process claim); Bennett v. Pippin, 74 F.3d 578, 583-584 (5th Cir. 1996) (affirming judgment against sheriff for substantive due process violation when sheriff raped female suspect which he had questioned while he wore badge and gun, told her that he was the sheriff and could do what he pleased, and threatened to throw her in jail if she resisted). The situations that state a claim of substantive due process do not bear a relation to the facts in this case.

Quite apart from waiver, the undisputed facts as a matter of law do not constitute the degree of "most egregious official conduct" which "shocks the conscience" necessary to state a substantive due process claim. County of Sacramento v. Lewis, 523 U.S. at 847. Tapia has not shown that the Defendants' conduct was so egregious as to "shock the conscience." Tapia's allegations amount to termination of his employment without just cause. The undisputed facts show that Beffort dismissed Tapia from his state employment based on evidence of Tapia's serious misconduct in office. Beffort believed that three volumes of documentary evidence, including the written statements of 20 witnesses, established Tapia's misconduct. See Second Affidavit of Steven R. Beffort ¶¶ 12-14, at 3. Tapia requested and reviewed all such evidence before Beffort's final decision as part of the notice and opportunity to be heard before the final decision.

In responding to the charges, Tapia alleged, without proof, that his proposed termination was based on "retaliatory intent" for his previously having filed a civil rights lawsuit against third parties -- the Tapia I action against the Department of Public Safety and officers. See Letter from E. Justin

13

Pennington to Mr. Jaramillo at 3. Subsequently, after considering Tapia's written response to the charges, Beffort decided to dismiss him and advised him in writing of his right to appeal his dismissal to the New Mexico Personnel Board within 30 days and the procedural requirements for initiating such an appeal. Tapia, however, did not appeal.

Thus, Tapia did not avail himself of the opportunity to force his employer to prove the merits of its case before the independent Personnel Board, which had the power to order reinstatement, and likewise failed to avail himself of the chance to produce evidence to the Personnel Board -- and to the New Mexico courts, on appeal of any adverse decision -- of alleged "retaliation," as opposed to making a conclusory unsupported allegation. Such a "deprivation" is unlike the governmental conduct that courts have held violate substantive due process.

In light of the undisputed facts, Tapia has not met his shifted burden to demonstrate that there are genuine issues for trial on his substantive due process claim. See Celotex Corp. v. Catrett, 477 U.S. at 323-324. In conclusion, there is no genuine issue as to any material fact on the procedural and substantive due process claims, as to either Tapia's property or liberty interests. The Defendants are entitled to judgment on those claims as a matter of law. Accordingly, the Court will grant summary judgment as to Tapia's 42 U.S.C. § 1983 substantive due process claim and enter judgment in favor of the Defendants.

### III.   MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO 42 U.S.C. § 1983 FIRST AMENDMENT CLAIM (QUALIFIED IMMUNITY)

The essence of Tapia's First Amendment claim is that the Defendants conspired to terminate his employment in retaliation for his filing of the Tapia I lawsuit. Tapia alleges that Beffort's stated reasons for the dismissal -- Tapia's misuse of state-owned vehicles, misuse of bureau employees

14

under his supervision, misappropriation of state property, misappropriation of cash and false statements -- "were not true reasons but were pretextual, and intended to retaliate against Tapia for his complaint in Tapia I" and that the dismissal therefore violated his constitutional rights to petition for redress, to exercise free speech, and to have access to the courts. See Complaint ¶¶ 1, 8-9, 11-18, 20, 22-23, 27, at 1-6.

The Defendants argue that: (i) they are entitled to qualified immunity because Tapia I did not involve protected speech; (ii) even if it did constitute protected speech, Tapia I was not a substantial or motivating factor in Beffort's decision to terminate Tapia; (iii) even if Tapia I was a substantial or motivating factor in the decision to terminate, it is undisputed that Beffort would have terminated Tapia even in the absence of the earlier lawsuit; and (iv) Rabourn and Haas had no input or involvement in Beffort's decision to terminate Tapia's employment.

The qualified immunity defense will prevail if Tapia is unable to establish that the Defendants' conduct violated his constitutional right to exercise free speech. The Defendants contend that Tapia cannot make such a showing because his "speech" in Tapia I is not entitled to First Amendment protection and thus Tapia's allegations do not establish a constitutional violation. The Defendants argue that the speech was not entitled to protection because Tapia's First Amendment activity -- his complaint and lawsuit in the Tapia I civil action -- did not involve speech on a matter of public concern as determined by its content, form, and context.[2]

The Tenth Circuit has adopted a multi-tier test to analyze whether a public employer's actions impermissibly infringe on an employee's free speech rights. See Martin v. City of Del City, 179 F.3d

---

[2] Tapia bears the burden of proof on this issue, and the Court's inquiry into the protected status of speech is a question of law, not fact.

15

882, 886 (10th Cir. 1999) (citing <u>Schalk v. Gallemore</u>, 906 F.2d 491, 494 (10th Cir. 1990)). First, the Court must decide whether the speech at issue touches on a matter of public concern. <u>See</u> <u>Connick v. Meyers</u>, 461 U.S. 138, 146 (1983). If it does, the Court must balance the interest of the employee in making the statement against the employer's interest "in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 568 (1968). If the preceding prerequisites are met, the speech is protected, and the plaintiff must show his or her expression was a motivating factor in the detrimental employment decision. <u>See</u> <u>Mount Healthy City School Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977). Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. <u>See</u> <u>id.</u>

To determine whether <u>Tapia I</u> touches on a matter of public concern, the Court must determine whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." <u>Connick v. Meyers</u>, 461 U.S. at 146. This examination requires analysis of the "content, form, and context of a given statement, as revealed by the whole record." <u>Id.</u> at 147-48. Courts have stated that, when the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern. <u>See</u> <u>Wulf v. City of Wichita</u>, 883 F.2d 842, 857 (10th Cir.1989). Conversely, speech is generally not protected if the aim is simply to air grievances of a purely personal nature. <u>See</u> <u>id.</u> It is not sufficient that the topic of the speech be of general interest to the public. What is actually said must be of public concern. <u>See</u> <u>Wilson v. City of Littleton</u>, 732 F.2d 765, 769 (10th Cir.1984).

Although <u>Tapia I</u> was a lawsuit against public employees and involved allegations of police misconduct, it was primarily personal in nature. Tapia, his wife, and his son filed the lawsuit seeking

16

monetary damages for emotional distress, pain and suffering, loss of income, injury to their reputations, humiliation, and embarrassment. The Court cannot say that the lawsuit's primary motivation was to draw public attention to the alleged police misconduct.

Even if Tapia's complaint and lawsuit in Tapia I constituted protected speech on a matter of public concern, Tapia has not satisfied his burden of demonstrating a genuine issue of material fact exists that his complaint and/or lawsuit in Tapia I were substantial or motivating factors in Beffort's decision to terminate Tapia's employment. Tapia has not presented evidence to show that Beffort was aware of Tapia I before he placed Tapia on administrative leave pending an investigation of the allegations of misconduct.[3] Tapia I first came to Beffort's attention when Tapia responded to being placed on administrative leave with a letter to Beffort raising the concern that he was being retaliated against for the prior lawsuit. See Letter from Tapia to Beffort (dated August 4, 2000). Additionally, Tapia's rule 56(f) affidavit does not specifically describe what discovery would be needed to create a factual issue with respect to Beffort's decision to terminate Tapia's employment. Tapia does not attempt to dispute Beffort's contentions of misconduct. Beffort's mere knowledge of Tapia I, without any evidence to support Tapia's speculative conclusions, is insufficient to survive summary judgment.[4]

---

[3] In his rule 56(f) affidavit, Tapia points out that he has been unable to conduct discovery related to Beffort's decision to terminate his employment. The Court notes, however, that Tapia did not oppose the Defendants' request for a stay. See Unopposed Motion by Defendants to Stay Discovery Based on Qualified Immunity (Doc. 23, filed September 12, 2002). Significantly, the motion to stay was filed approximately three weeks after the motion for summary judgment on the First Amendment qualified immunity issue and nearly two months after the motion for summary judgment on the due process claims. Tapia had time to review the two summary judgment motions and oppose the motion to stay if necessary.

[4] The Defendants do no dispute that Beffort may have been aware of the existence of Tapia I, but only contend that he did not know the details of the claims or allegations. The mere scintilla of evidence that Beffort knew of the earlier lawsuit does not create a genuine issue of material fact with respect to whether such knowledge was a motivating factor in the decision to terminate Tapia's employment. Even if Tapia could raise

Even if Tapia were able to establish a prima facie case that his protected speech in Tapia I was a substantial or motivating factor in the decision to terminate him, the evidence is not disputed that Beffort would have made the same decision to terminate Tapia's employment even in the absence of his complaint and lawsuit in Tapia I. Beffort made the decision to terminate Tapia based on substantial evidence of serious misconduct in the course of his employment. Beffort informed Tapia of the basis for this decision. Tapia reviewed the evidence against him and responded through his attorney. Tapia did not take advantage of the opportunity to force Beffort to prove these allegations in a hearing before the Personnel Board. Thus, the Defendants have shown that there is no genuine issue of material fact whether Beffort would have made the same decision even in the absence of Tapia I. Accordingly, the Court will grant summary judgment as to Tapia's First Amendment retaliation claim and enter judgment in favor of the Defendants.

Finally, Tapia has not presented the Court with evidence to show that Rabourn and Haas had input or involvement in Beffort's decision to terminate Tapia's employment. Because Tapia has sued these two defendants in their individual capacities, the Court may base their liability only on their personal and individual conduct. At oral argument, Tapia conceded that he does not have any direct evidence of any involvement on the part of Rabourn or Haas. He has also conceded that he does not have any direct evidence that Rabourn or Haas discussed Tapia I with Beffort. Rabourn and Haas are not individually liable for the termination.

There is no genuine issue as to any material facts. The Defendants are entitled to judgment on Tapia's claim as a matter of law, for a number of separate, alternative reasons. All of the

---

a genuine issue of material fact on this issue, there is no evidence to create such an issue of fact with respect to the questions whether Tapia I constituted protected speech or if Beffort would have terminated Tapia's employment even in the absence of Tapia I.

Defendants are entitled to qualified immunity.

**WHEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss 42 U.S.C. § 1985 Claim, Motion for Partial Summary Judgment as to 42 U.S.C. § 1983 Due Process Claims, and Motion for Partial Summary Judgment as to 42 U.S.C. § 1983 First Amendment Claim (Qualified Immunity) are granted.  All the Plaintiff's claims against all Defendants are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

MICHELE MASIOWSKI
Santa Fe, New Mexico

    *Attorney for Plaintiff*

MICHAEL DICKMAN
Santa Fe, New Mexico

    *Attorney for Defendants*